UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CHARLES LEE RANDOLPH,<br><br>　Petitioner,<br>　　v.<br><br>WILLIAM GITTERE, *et al.*,<br><br>　Respondents. | Case No. 3:08-cv-00650-LRH-CBC<br><br>ORDER |

Introduction

This action is a petition for writ of habeas corpus by Charles Lee Randolph, a Nevada prisoner sentenced to death. The case is before the Court with respect to a motion to dismiss filed by the respondents. In the motion to dismiss, the respondents assert that several of the claims in Randolph's amended habeas petition are barred by the statute of limitations, unexhausted, or procedurally defaulted. The Court will grant the motion to dismiss in part and deny it in part, will dismiss one of Randolph's claims, and will set a schedule for the respondents to file an answer, responding to the remainder of Randolph's claims.

Background

In its opinion on Randolph's direct appeal, the Nevada Supreme Court described the factual background of this case as follows:

> On May 5, 1998, John Shivell was working the graveyard shift as a security guard at an apartment complex in Las Vegas. Shivell was in a guard shack at the gated entrance of the complex. Directly to the west was the parking lot of Doc Holliday's, a bar. Around 1:00 a.m. he heard a sound from the parking lot "like a, a short barking, laugh." Shivell saw two men enter a car and drive out of the parking lot. As the car passed by on the street, he identified it as an older model Cadillac with an opera window. Shivell telephoned Doc Holliday's, but no one answered. He then called the Las Vegas Metropolitan Police Department (LVMPD).

1

LVMPD officers arrived about ten minutes later and found the bar locked. After the manager of the bar arrived to open the bar, officers entered Doc Holliday's around 2:00 a.m. They discovered the body of Shelly Lokken, the bartender, in the cooler. Lokken's wrists were bound by handcuffs.

Dr. Giles Green performed the autopsy on Lokken's body. Red marks on her wrists indicated that she was still alive when she was handcuffed. She had been shot twice in the head. The first gunshot entered Lokken's right cheek below her eye and exited below her left ear. The shot broke off part of her epiglottis, and she inhaled blood into her lungs. The second gunshot entered the back of her head on the right side and exited above her left eyebrow. This shot was instantaneously fatal.

The blood pooled around Lokken's head and upper body at the crime scene was consistent with her having first been shot while she was upright on her knees. The blood flowed down toward the face from the wound at the back of her head, indicating that she had fallen to the floor by the time of the second shot. A bullet impact site in the concrete floor was consistent with this scenario. Police also found in the cooler a nine-millimeter bullet casing, the copper jacket and lead portion from a spent bullet, and a bullet impact site in the wall.

The bar's cash register was empty of money. The drawer below the register, which served as a gaming bank, was also empty. Inside the office a videocassette recorder (VCR) and multiplexer had been taken from the security surveillance system. The bottom part of a safe in the office was unlocked and open. Lokken had the keys to the safe when she began her shift. Missing from the safe was a green bank bag containing about $3,500.00. A total of $4,629.00 was taken from the bar.

The afternoon following the crimes, police responded to a 911 call from two women at a Las Vegas motel. The women told police that they had spent the night with two men who they thought were involved in the murder at Doc Holliday's. One of the men was still at the motel. Police went to the room occupied by the man, Tyrone Garner, and questioned him. Garner said that he had loaned his car to someone. Police found a set of keys to the car in the room, and Garner gave them permission to take the keys and search the car if they found it. The car was soon located a few blocks away; it matched the description of the car seen leaving Doc Holliday's early that morning. A VCR and multiplexer were found in its trunk. Police also found a nine-millimeter semiautomatic pistol in the trunk. Testing showed that the pistol had fired the bullet casing and fragments recovered from Doc. Holliday's.

A multiplexer takes images from multiple cameras and simultaneously records them on one videotape. The recovered VCR contained a surveillance videotape with input from several cameras at Doc Holliday's. A tape showing the view from each camera in succession was made. The tape was shown to Adell Thompson, among others. Thompson was the general manager of Herman's Barbecue, which operated the kitchen at Doc Holliday's. The tape showed a man whom Thompson identified as appellant Randolph. Randolph had worked at the kitchen for two or three weeks just prior to the crimes.

2

The doors to the bar were always locked during the graveyard shift at Doc Holliday's. A customer had to press a button to seek entry at the front door, and the bartender could see the customer on a monitor linked to the video surveillance system. The bartender could then decide whether to "buzz" a customer in.

The surveillance tape contained about nine minutes of footage relevant to the crimes at Doc Holliday's. Lokken let Randolph into the bar around 12:56 a.m. He entered alone, and the tape showed no one else in the bar except Lokken. Randolph sat down at the bar for a short time, then stood up, reached in his waistband, and pulled out a gun. He climbed over the bar and jumped down in front of Lokken. She raised her arms up, and Randolph moved her out of camera view. The tape did not show Lokken again, but Randolph came in and out of view several times. Around 1:00 a.m., he opened the cash register. A view of the bar also showed occasional flashes of light emanating from beyond the camera view. These flashes were attributable to the opening of the door to the kitchen/office area, which was better lit than the bar, as Randolph went in or out that door. The tape went black just before 1:05 a.m.

Acting on an anonymous tip, LVMPD officers apprehended Randolph on May 8, 1998. As detectives drove Randolph to their office, he asked why he was in custody. The detectives said they were investigating the shooting at Doc Holliday's, and Randolph denied knowing anything about that. When told that he appeared on the surveillance tape, he became quiet and said he would tell the detectives what he knew. At the office, Randolph gave a voluntary recorded statement.

Randolph admitted that he had been on a cocaine binge before the shooting, that he ran out of money and wanted more drugs, and that Garner drove him to Doc Holliday's so he could steal money to buy more drugs. He admitted that he took money from the safe and the cash register, abut said he did not know about Lokken's murder. He claimed that he let Garner into the bar through the backdoor to the kitchen. According to Randolph, Garner wore a mask, had a gun and handcuffs, put the handcuffs on Lokken, and took her to the cooler. Randolph said that he left the building and heard a muffled gunshot and Garner then came out.

Randolph's account was not always coherent or consistent., *e.g.*, he first admitted and later denied having a gun, and he first said he "didn't even hear" and later said he heard a muffled shot. No videotape or physical evidence supported Randolph's claim that Garner was ever inside the bar.

The jury found Randolph guilty of first-degree murder with use of a deadly weapon and four other offenses.

During the penalty phase, the State presented evidence of Randolph's prior criminal history. It also called Lokken's mother and brother, who gave victim impact testimony. Randolph called a forensic psychiatrist, who testified regarding Randolph's personality, abuse that he suffered growing up, his individual and family history of substance abuse, and the effect of his intensive use of crack cocaine. Randolph's wife and stepdaughter testified on his behalf, and Randolph testified in allocution.

3

> The jurors found three aggravating circumstances, that the murder was committed: during the commission of a burglary, during the commission of a robbery, and to avoid or prevent a lawful arrest. As a mitigating circumstance, they found that Randolph committed the murder while under the influence of extreme mental or emotional disturbance. Finding that the aggravating circumstances outweighed the mitigating, the jurors imposed a sentence of death. [Footnote: Garner was tried separately, convicted, and sentenced to lengthy terms in prison. *See Garner v. State*, 116 Nev. 770, 6 P.3d 1013 (2000), *cert. denied*, 121 S.Ct. 1376 (2001).]

Opinion, Exh. 88 (ECF No. 42-3), pp. 2-5 (opinion published as *Randolph v. State*, 117 Nev. 970, 36 P.3d 424 (2001)). The judgment of conviction was filed on April 14, 2000. *See* Judgment of Conviction, Exh. 35 (ECF No. 39-25).

Randolph appealed, and the Nevada Supreme Court affirmed the judgment of conviction on December 14, 2001. *See* Appellant's Opening Brief, Exh. 85 (ECF No. 41-25) and Exh. 136 (ECF No. 48-1); Appellant's Reply Brief, Exh. 87 (ECF No. 42-2); Opinion, Exh. 88 (ECF No. 42-3). The Nevada Supreme Court denied Randolph's petition for rehearing on February 22, 2002. *See* Petition for Rehearing, Exh. 92 (ECF No. 42-7); Order Denying Rehearing, Ex. 93 (ECF No. 42-8). The United States Supreme Court denied Randolph's petition for writ of certiorari on October 7, 2002. *See Randolph v. Nevada*, 537 U.S. 845 (2002). The Nevada Supreme Court's remittitur was issued on October 17, 2002. *See* Remittitur, Exh. 95 (ECF No. 42-10).

On January 10, 2003, Randolph filed a *pro se* petition for writ of habeas corpus in state court. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 43 (ECF No. 40-8). After counsel was appointed for Randolph, Randolph filed a supplemental petition. *See* Supplemental Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 46 (ECF No. 40-10); Points and Authorities in Support of Petition (and Supplemental Petition) for Writ of Habeas Corpus (Post-Conviction), Exh. 47 (ECF No. 40-12); Reply, Exh. 49 (ECF No. 40-14). Subsequently, Randolph further supplemented his petition to add an additional claim. *See* Supplemental Motion in Support of Writ of Habeas Corpus (Post-Conviction), Exh. 50 (ECF No. 40-15); Reply, Exh. 53 (ECF No. 40-18). The court held an evidentiary hearing on October 6, 2005. *See* Transcript of Evidentiary Hearing, Exh. 54 (ECF No. 40-19). The court denied

Randolph's petition in an order filed on January 30, 2006. *See* Findings of Fact, Conclusions of Law and Order, Exh. 55 (ECF No. 40-20). Randolph appealed, and on March 13, 2008, the Nevada Supreme Court affirmed the denial of his petition. *See* Appellant's Opening Brief, Exh. 97 (ECF No. 42-12); Appellant's Supplemental Brief, Exh. 104 (ECF No. 42-19); Appellant's Supplemental Reply Brief, Exh. 106 (ECF No. 42-21); Order of Affirmance, Exh. 107 (ECF No. 42-22). The Nevada Supreme Court's remittitur was issued on April 8, 2008. *See* Remittitur, Exh. 108 (ECF No. 42-23).

Randolph initiated this federal habeas corpus action, by filing a *pro se* habeas petition, on December 12, 2008 (ECF No. 2). The Court appointed counsel for Randolph. *See* Order entered February 24, 2009 (ECF No. 9); Notice of Appearance of Counsel (ECF No. 10). Then, Randolph and the respondents agreed to a stay of this action pending Randolph's further exhaustion of claims in state court, and the Court approved that stipulation and stayed the case on April 15, 2009. *See* Stipulation (ECF No. 13); Order entered April 15, 2009 (ECF No. 14).

Randolph initiated a second state habeas action on April 7, 2009. S*ee* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 65 (ECF No. 41-5). The state district court heard argument of the parties regarding that petition on November 30, 2010. *See* Transcript of Proceedings, November 30, 2010, Exh. 78 (ECF No. 41-18). The court denied Randolph's petition in an order filed on February 9, 2011. *See* Findings of Fact, Conclusions of Law and Order, Exh. 79 (ECF No. 41-19). Randolph appealed. *See* Appellant's Opening Brief, Exh. 114 (ECF No. 43-4); Appellant's Reply Brief, Exh. 116 (ECF No. 43-6). The Nevada Supreme Court affirmed the denial of Randolph's petition on January 24, 2014. *See* Order of Affirmance, Exh. 117 (ECF No. 43-7). The Nevada Supreme Court denied rehearing on July 25, 2017. *See* Order Denying Rehearing, Exh. 133 (ECF No. 43-23).

The stay of this action was lifted on September 11, 2017 (ECF No. 36). On November 17, 2017, Randolph filed an amended habeas petition, which is now the

operative petition in this case, (ECF No. 37). Randolph's amended petition asserts the following claims:

>    1. Randolph's federal constitutional rights were violated as a result of prosecutorial misconduct, because the prosecutor made an argument to the jury mischaracterizing "reasonable doubt." Amended Petition (ECF No. 37), pp. 18-26.
>
>    2. Randolph's federal constitutional rights were violated as a result of erroneous jury instructions concerning aiding and abetting and vicarious co-conspirator liability. *Id.* at 27-37.
>
>    3. Randolph's federal constitutional rights were violated as a result of "jury instructions which unconstitutionally offered invalid alternative theories of guilt." *Id.* at 38-40.
>
>    4. Randolph's federal constitutional rights were violated as a result of judicial bias. *Id.* at 41-50.
>
>    5. Randolph's federal constitutional rights were violated as a result of "jury instructions which failed to properly define the elements of deliberate and premeditated First-Degree Murder." *Id.* at 51-55.
>
>    6. Randolph's federal constitutional rights were violated as a result of "jury instructions which unfairly and improperly changed and vastly expanded the State's theories of alleged guilt, with mere hours of legal notice." *Id.* at 56-59.
>
>    7. Randolph's federal constitutional rights were violated because "during the trial, Charles Randolph's thoughts and judgment were clouded by State-administered psychotropic medication," and because his trial counsel were ineffective for failing to raise this issue. *Id.* at 60-64.
>
>    8. Randolph's federal constitutional rights were violated because "Mr. Randolph's statements at trial and the trial Judge's 'canvass' of Mr. Randolph were legally and factually inadequate and ineffective to constitute an admission of guilt." *Id.* at 65-73.
>
>    9. Randolph's federal constitutional rights were violated as a result of ineffective assistance of counsel on his direct appeal. *Id.* at 74-83.
>
>    10. Randolph's federal constitutional rights were violated as a result of ineffective assistance of trial counsel. *Id.* at 84-89.
>
>    11. Randolph's federal constitutional rights were violated because he is actually innocent of the death penalty. *Id.* at 90-91.
>
>    12. Randolph's federal constitutional rights were violated because "the Nevada Supreme Court engaged in improper appellate fact-finding and resentencing (deemed "reweighing") after striking two of the three aggravating circumstances found by the jury." *Id.* at 92-97.

    13. Randolph's federal constitutional rights were violated because "the jury's death determination was legally and factually inadequate, and was made without any legal standards or any jury finding of *mens rea*." *Id.* at 98-100.

    14. Randolph's federal constitutional rights were violated as a result of the cumulative effect of the errors. *Id.* at 101-03.

The respondents filed a motion to dismiss Randolph's amended petition on March 23, 2018 (ECF No. 47). In their motion to dismiss, Respondents argue that various claims in Randolph's amended habeas are untimely, not cognizable, unexhausted in state court, and procedurally defaulted. On May 23, 2018, Randolph filed an opposition to the motion to dismiss (ECF No. 50). Respondents filed a reply on July 23, 2018 (ECF No. 57).

Procedural Default

  The Law Regarding Procedural Defaults

  In *Coleman v. Thompson*, the Supreme Court held that a state prisoner who fails to comply with the State's procedural requirements in presenting his claims is barred by the adequate and independent state ground doctrine from obtaining a writ of habeas corpus in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991) ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."). Where such a procedural default constitutes an adequate and independent state ground for denial of habeas corpus, the default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting from it. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

  To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey*

7

*v. Zant*, 499 U.S. 467, 497 (1991). With respect to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989), citing *United States v. Frady*, 456 U.S. 152, 170 (1982).

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court ruled that ineffective assistance of post-conviction counsel may serve as cause, to overcome the procedural default of a claim of ineffective assistance of trial counsel. In *Martinez*, the Supreme Court noted that it had previously held, in *Coleman v. Thompson*, 501 U.S. 722, 746-47 (1991), that "an attorney's negligence in a postconviction proceeding does not establish cause" to excuse a procedural default. *Martinez*, 566 U.S. at 15. The *Martinez* Court, however, "qualif[ied] *Coleman* by recognizing a narrow exception: inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. The Court described "initial-review collateral proceedings" as "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." *Id.* at 8.

<u>Adequacy of State Procedural Rules</u>

<u>NRS §§ 34.726 and 34.800 – Statute of Limitations and Laches</u>

Randolph argues that NRS § 34.726, the state statute of limitations, and NRS § 34.800, the state laches rule, were not adequate to support application of the procedural default doctrine. *See* Opposition to Motion to Dismiss (ECF No. 50), pp. 14-19.

A state procedural rule is "adequate" if it was "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. United States Dist. Court* (*Bean*), 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted); *see also Ford v. Georgia*, 498 U.S. 411, 424 (1991) (state procedural rule adequate if "firmly established and regularly followed by the time as of

8

which it is to be applied" (citation and internal quotation marks omitted)); *Lambright v. Stewart*, 241 F.3d 1201, 1203 (9th Cir. 2001). However, state courts' exercise of discretion in isolated cases does not necessarily render procedural rules inadequate. *See Walker v. Martin*, 562 U.S. 307, 319-21 (2011) (rule not automatically inadequate "upon a showing of seeming inconsistencies;" state court must be allowed discretion "to avoid the harsh results that sometimes attend consistent application of an unyielding rule"); *see also Beard v. Kindler*, 558 U.S. 53, 60-61 (2009) ("[A] discretionary rule can be 'firmly established' and 'regularly followed' -- even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others.").

In *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), the court of appeals established a burden-shifting test for analyzing adequacy. Under *Bennett*, the State carries the initial burden of pleading "the existence of an independent and adequate state procedural ground as an affirmative defense." *Bennett*, 322 F.3d at 586. The burden then shifts to the petitioner "to place that defense in issue," which the petitioner may do "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.* If the petitioner meets this burden, "the ultimate burden" of proving the adequacy of the procedural rule rests with the State, which must demonstrate "that the state procedural rule has been regularly and consistently applied in habeas actions." *Id.*; *see also King v. Lamarque*, 464 F.3d 963, 966-67 (9th Cir. 2006).

The respondents meet their initial burden by asserting that NRS §§ 34.726 and 34.800 constituted independent and adequate state procedural grounds for the Nevada Supreme Court's rulings. *See* Motion to Dismiss (ECF No. 47), pp. 13-14; *see also Bennett*, 322 F.3d at 586. In response, Randolph argues that NRS §§ 34.726 and 34.800 were inadequate. *See* Opposition to Motion to Dismiss (ECF No. 50), pp. 14-19. The Court determines that Randolph has not shown these rules to be inadequate.

The Ninth Circuit Court of Appeals has repeatedly held NRS § 34.726 and NRS § 34.800 to be adequate to support application of the procedural default defense. *See*

*Moran v. McDaniel*, 80 F.3d 1261, 1269-70 (9th Cir. 1996); *see also High v. Ignacio*, 408 F.3d 585, 590 (9th Cir. 2005); *Collier v. Bayer*, 408 F.3d 1279, 1285 (9th Cir. 2005); *Loveland v. Hatcher*, 231 F.3d 640, 642-63 (9th Cir. 2000). The court of appeals has never ruled either of these Nevada procedural rules to be inadequate. Randolph does not show NRS § 34.726 or NRS § 34.800 to be other than clear, consistently applied and well-established at the time of his alleged defaults.

### NRS § 34.810 – Successive Petitions

The respondents meet their initial burden by asserting that NRS § 34.810 constituted an independent and adequate state procedural ground for the Nevada Supreme Court's rulings. *See* Motion to Dismiss (ECF No. 47), pp. 13-14; *see also Bennett*, 322 F.3d at 586. In response, Randolph argues that NRS § 34.810 was inadequate. *See* Opposition to Motion to Dismiss (ECF No. 50), pp.14-19.

The Ninth Circuit Court of Appeals has held NRS § 34.810 to be inadequate to support application of the procedural default defense. *See, e.g.*, *Valerio v. Crawford*, 306 F.3d 742, 776-78 (9th Cir. 2002). In the face of that ruling, the respondents do not show that as of 2001, when Randolph's direct appeal was completed, the state courts regularly and consistently applied § 34.810 in habeas cases. *See Riley v. McDaniel*, 786 F.3d 719, 722-23 (9th Cir. 2015). Therefore, for the purpose of this order, the Court does not consider § 34.810 to be adequate to support application of the procedural default doctrine.

### Independence of Application of State Procedural Rules

"[T]he independent state grounds doctrine bars the federal courts from reconsidering the issue in the context of habeas corpus review as long as the state court explicitly invokes a state procedural bar rule as a separate basis for its decision." *Moran v. McDaniel*, 80 F.3d 1261, 1269 (1996), quoting *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995). So long as the state court clearly indicates that its decision rests on independent and adequate state grounds, federal review of the claim is

precluded. *See Siripongs v. Calderon*, 35 F.3d 1308, 1317 (9th Cir.1994), *cert. denied*, 513 U.S. 1183 (1995).

Randolph argues that the state courts' reliance on state procedural rules to bar his claims in state court was not independent of federal law and, therefore, cannot support application of the procedural default doctrine in this case. *See* Opposition to Motion to Dismiss (ECF No. 50), pp. 13-14. The Court finds that argument to be without merit. Randolph does not point to any application of a state procedural rule, in state court, that was dependent upon federal law.

Anticipatory Procedural Default

The Supreme Court has recognized that under certain circumstances it may be appropriate for a federal court to anticipate the state-law procedural bar of an unexhausted claim, and to treat such a claim as subject to the procedural default doctrine. "An unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the petitioner from bringing the claim in state court." *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (citing *Coleman*, 501 U.S. at 731).

In light of the procedural history of this case, and, in particular, the rulings of the state courts in Randolph's second state habeas action, this Court determines that any unexhausted claims would be ruled procedurally barred in state court if Randolph were to again return to state court to attempt to exhaust those claims. Therefore, the anticipatory default doctrine applies to Randolph's unexhausted claims, and the Court considers those claims to be technically exhausted but subject to the procedural default doctrine. *See Dickens*, 740 F.3d at 1317.

Claim-by-Claim Analysis

Claim 1

In Claim 1, Randolph claims that his federal constitutional rights were violated as a result of prosecutorial misconduct, because the prosecutor made an argument to the jury mischaracterizing "reasonable doubt." Amended Petition (ECF No. 37), pp. 18-26.

Respondents argue that parts of this claim are unexhausted in state court, and therefore now procedurally defaulted. *See* Motion to Dismiss (ECF No. 47), pp. 15-17; *see also Dickens*, 740 F.3d at 1317. The Court finds this argument by the respondents to be without merit. The petitioner asserted this claim on his direct appeal. *See* Appellant's Opening Brief, Exh. 85 (ECF No. 41-25), pp. 28-32; Appellant's Reply Brief, Exh. 87 (ECF No. 42-2), pp. 4-6. The Nevada Supreme Court ruled on the claim on its merits. *See* Opinion, Exh. 88 (ECF No. 42-3), pp. 8-12.

The Court will deny the motion to dismiss with respect to Claim 1.

Claim 2

In Claim 2, Randolph claims that his federal constitutional rights were violated as a result of erroneous jury instructions concerning aiding and abetting and vicarious co-conspirator liability. Amended Petition (ECF No. 37), pp. 27-37.

Respondents argue –accurately, in the Court's view – that this claim was first raised in state court in Randolph's first state habeas action but was ruled procedurally barred by the Nevada Supreme Court, under NRS § 34.810, because it was not presented on Randolph's direct appeal. *See* Order of Affirmance, Exh. 107 (ECF No. 42-22), p. 5 n.12. As is discussed above, however, the Court determines that NRS § 34.810 is inadequate to support application of the procedural default doctrine in this case.

Therefore, the Court will deny Respondents' motion to dismiss with respect to Claim 2.

Claim 3

In Claim 3, Randolph claims that his federal constitutional rights were violated as a result of "jury instructions which unconstitutionally offered invalid alternative theories of guilt." Amended Petition (ECF No. 37), pp. 38-40.

Here again, Respondents point out that this claim was first raised in state court in Randolph's first state habeas action but was ruled procedurally barred by the Nevada Supreme Court under NRS § 34.810 because it was not presented on Randolph's direct

appeal. *See* Order of Affirmance, Exh. 107 (ECF No. 42-22), p. 5 n.12. Again, the Court determines that NRS § 34.810 is inadequate to support application of the procedural default doctrine in this case.

The Court will, therefore, deny Respondents' motion to dismiss with respect to Claim 3.

Claim 4

In Claim 4, Randolph claims that his federal constitutional rights were violated as a result of judicial bias. Amended Petition (ECF No. 37), pp. 41-50.

Respondents argue that parts of this claim are unexhausted in state court, and therefore now procedurally defaulted. *See* Motion to Dismiss (ECF No. 47), pp. 18-19; *see also Dickens*, 740 F.3d at 1317. The Court finds this argument to be without merit. The petitioner asserted this claim on his direct appeal. *See* Appellant's Opening Brief, Exh. 85 (ECF No. 41-25), pp. 40-44 (page 40 is at Exh. 136 (ECF No. 48-1)); Appellant's Reply Brief, Exh. 87 (ECF No. 42-2), pp. 6-7. The Nevada Supreme Court ruled on the claim on its merits. *See* Opinion, Exh. 88 (ECF No. 42-3), pp. 13-14.

The Court will deny the motion to dismiss with respect to Claim 4.

Claim 5

In Claim 5, Randolph claims that his federal constitutional rights were violated as a result of "jury instructions which failed to properly define the elements of deliberate and premeditated First-Degree Murder." Amended Petition (ECF No. 37), pp. 51-55.

Respondents argue that parts of this claim are unexhausted in state court, and therefore now procedurally defaulted. *See* Motion to Dismiss (ECF No. 47), pp. 19-20; *see also Dickens*, 740 F.3d at 1317. The Court finds this argument to be without merit. The petitioner asserted this claim on his direct appeal. *See* Appellant's Opening Brief, Exh. 85 (ECF No. 41-25), pp. 32-35. The Nevada Supreme Court ruled on the claim on its merits. *See* Opinion, Exh. 88 (ECF No. 42-3), pp. 15-16.

The Court will deny the motion to dismiss with respect to Claim 5.

///

### Claim 6

In Claim 6, Randolph claims that his federal constitutional rights were violated as a result of "jury instructions which unfairly and improperly changed and vastly expanded the State's theories of alleged guilt, with mere hours of legal notice." Amended Petition (ECF No. 37), pp. 56-59.

Respondents argue that this claim is, in part, unexhausted in state court and therefore now procedurally defaulted. *See* Motion to Dismiss (ECF No. 47), pp. 20-21; *see also Dickens*, 740 F.3d at 1317. The Court finds this argument to be without merit. The petitioner asserted this claim on his direct appeal. *See* Appellant's Opening Brief, Exh. 85 (ECF No. 41-25), pp. 19-27; Appellant's Reply Brief, Exh. 87 (ECF No. 42-2), pp. 1-4. The Nevada Supreme Court ruled on the claim on its merits. See Opinion, Exh. 88 (ECF No. 42-3), pp.5-8.

The Court will deny the motion to dismiss with respect to Claim 6.

### Claim 7

In Claim 7, Randolph claims that his federal constitutional rights were violated because "during the trial, Charles Randolph's thoughts and judgment were clouded by State-administered psychotropic medication," and because his trial counsel were ineffective for failing to raise this issue. Amended Petition (ECF No. 37), pp. 60-64.

Respondents argue that Claim 7 is procedurally defaulted. *See* Motion to Dismiss (ECF No. 47), pp. 21-22.

Regarding the substantive part of Claim 7 – the claim that Randolph was rendered incompetent during his trial by psychotropic medication – Randolph raised such a claim in state court in his second state habeas action, and the Nevada Supreme Court ruled the claim to be procedurally barred by NRS §§ 34.726, 34.800 and 34.810. *See* Order of Affirmance, Exh. 117 (ECF No. 43-7), pp. 3-4. As is discussed above, NRS §§ 34.726 and 34.800 are adequate to support application of the procedural default doctrine. The Court determines, however, that Randolph could possibly show cause and prejudice relative to this procedural default by showing ineffective assistance

of his counsel on his direct appeal. *See* Amended Petition (ECF No. 37), pp. 74-83 (Claim 9, claiming ineffective assistance of appellate counsel). The Court determines further that this issue, whether Randolph can show cause and prejudice relative to the substantive part of Claim 7, will be better addressed, in conjunction with the merits of the claim, after Respondents file an answer, and Randolph files a reply. The Court will, therefore, deny the motion to dismiss with respect to the substantive part of Claim 7, without prejudice to Respondents asserting the procedural default defense to the claim in their answer.

Turning to the claim of ineffective assistance of trial counsel in Claim 7, Randolph asserted such a claim on the appeal in his first state habeas action, and the Nevada Supreme Court denied the claim, stating that "Randolph did not describe these claims in detail or explain any prejudice from alleged deficiencies," and that the state district court properly denied the claim on that ground. *See* Order of Affirmance, Exh. 107 (ECF No. 42-22), p. 6. Here, Randolph may be able to show cause and prejudice for the default, under *Martinez v. Ryan*, 566 U.S. 1 (2012), by showing that his counsel in the state district court proceedings in his first state habeas action was ineffective for failing to present the claim in the more detailed manner in which he now presents it in this Court. Here too, though, the Court determines that this issue, whether Randolph can show cause and prejudice relative to the ineffective assistance of trial counsel part of Claim 7, will be better addressed, in conjunction with the merits of the claim, after Respondents file an answer, and Randolph files a reply. The Court will, therefore, deny the motion to dismiss with respect to the ineffective assistance of trial counsel part of Claim 7, without prejudice to Respondents asserting the procedural default defense to the claim in their answer.

Claim 8

In Claim 8, Randolph claims that his federal constitutional rights were violated because "Mr. Randolph's statements at trial and the trial Judge's 'canvass' of

1 | Mr. Randolph were legally and factually inadequate and ineffective to constitute an
2 | admission of guilt." Amended Petition (ECF No. 37), pp. 65-73.

3 Randolph raised such a claim in state court in his second state habeas action, and the Nevada Supreme Court ruled the claim to be procedurally barred by NRS §§ 34.726, 34.800 and 34.810. *See* Order of Affirmance, Exh. 117 (ECF No. 43-7), pp. 3-4. NRS §§ 34.726 and 34.800 are adequate to support application of the procedural default doctrine. The Court determines, however, that Randolph could possibly show cause and prejudice relative to this procedural default by showing that his counsel on his direct appeal was ineffective. *See* Amended Petition (ECF No. 37), pp. 74-83 (Claim 9, claiming ineffective assistance of appellate counsel). The Court determines further, however, that this issue will be better addressed, in conjunction with the merits of the claim, after Respondents file an answer, and Randolph files a reply. The Court will, therefore, deny the motion to dismiss with respect to Claim 8, without prejudice to Respondents asserting the procedural default defense to the claim in their answer.

Claim 9

In Claim 9, Randolph claims that his federal constitutional rights were violated as a result of ineffective assistance of counsel on his direct appeal. Amended Petition (ECF No. 37), pp. 74-83.

Randolph asserted claims of ineffective assistance of his appellate counsel on the appeals in both his first and second state habeas actions. *See* Appellant's Opening Brief, Exh. 97 (ECF No. 42-12), pp. 40-46; Appellant's Opening Brief, Exh.114 (ECF No. 43-4), pp. 50-52. In his first state habeas action, the Nevada Supreme Court appears to have denied the claim without any discussion. *See* Order of Affirmance, Exh. 107 (ECF No. 42-22). Respondents do not show this claim to be procedurally defaulted.

In addition to their procedural default argument, Respondents argue that part of Claim 9 – the claim of ineffective assistance of appellate counsel for failing to assert on direct appeal the claim that the prosecution mischaracterized "reasonable doubt" – is barred by the one-year statute of limitations that is applicable to this case. *See*

1 | 28 U.S.C. § 2244(d). However, Respondents do not dispute that Randolph's original
2 | *pro se* petition in this case was timely filed (*see* Motion to Dismiss (ECF No. 47), p. 14),
3 | and claims in an amended habeas petition relate back to the original petition, under
4 | Federal Rule of Civil Procedure 15(c), for purposes of the statute of limitations analysis,
5 | if they arise out of a common core of operative facts uniting the claims in the original
6 | and amended petitions. *See Mayle v. Felix*, 545 U.S. 644, 659 (2005). The Court
7 | determines that all of Claim 9 relates back to claims in Randolph's original petition
8 | (ECF No. 2). Claim 9 – in its entirety -- is not barred by the statute of limitations.

The Court will deny the motion to dismiss with respect to Claim 9.

Claim 10

In Claim 10, Randolph claims that his federal constitutional rights were violated as a result of ineffective assistance of trial counsel. Amended Petition (ECF No. 37), pp. 84-89.

Respondents argue that Claim 10, is, in whole or in part, procedurally defaulted. However, Randolph may be able to show cause and prejudice for any procedural default of any part of Claim 10 under *Martinez v. Ryan*, 566 U.S. 1 (2012), by showing that his counsel in the state district court proceedings in his first state habeas action was ineffective. This issue, though, will be better addressed, in conjunction with the merits of the claim, after Respondents file an answer, and Randolph files a reply. The Court will, therefore, deny the motion to dismiss with respect to Claim 10, without prejudice to Respondents asserting the procedural default defense to the claim in their answer.

Claim 11

In Claim 11, Randolph claims that his federal constitutional rights were violated because he is actually innocent of the death penalty. Amended Petition (ECF No. 37), pp. 90-91.

///
///

Respondents contend that Claim 11 is procedurally defaulted and is not cognizable in this federal habeas corpus action at any rate. *See* Motion to Dismiss (ECF No. 47), p. 28.

In response, Randolph clarifies that his claim of actual innocence of the death penalty is not asserted as a freestanding claim for habeas corpus relief but is only asserted as a means of overcoming any procedural default of his other claims. *See* Opposition to Motion to Dismiss (ECF No. 50), pp. 32-33.

In view of Randolph's explanation of this part of his amended petition, the Court will grant Respondents' motion to dismiss with respect to Claim 11 and will dismiss the claim. The dismissal of Claim 11 is without prejudice to Randolph asserting alleged actual innocence of the death penalty as a means of overcoming any procedural default of any of his other claims.

Claim 12

In Claim 12, Randolph claims that his federal constitutional rights were violated because "the Nevada Supreme Court engaged in improper appellate fact-finding and resentencing (deemed 'reweighing') after striking two of the three aggravating circumstances found by the jury." Amended Petition (ECF No. 37), pp. 92-97.

Respondents argue that Claim 12 is procedurally defaulted. *See* Motion to Dismiss (ECF No. 47), pp. 28-29. Randolph responds, arguing that he can overcome any procedural default of this claim by showing cause and prejudice based on his contention that the claim did not arise until the Nevada Supreme Court ruled on the appeal in his first state habeas action, and based on his alleged actual innocence of the death penalty. *See* Opposition to Motion to Dismiss (ECF No. 50), p. 32. The Court determines that these issues will be better addressed, in conjunction with the merits of the claim, after Respondents file an answer, and Randolph files a reply. The Court will, therefore, deny the motion to dismiss with respect to Claim 12, without prejudice to Respondents asserting the procedural default defense to the claim in their answer.

///

Claim 13

In Claim 13, Randolph claims that his federal constitutional rights were violated because "the jury's death determination was legally and factually inadequate, and was made without any legal standards or any jury finding of *mens rea*." Amended Petition (ECF No. 37), pp. 98-100.

Respondents argue that Claim 13 is procedurally defaulted. *See* Motion to Dismiss (ECF No. 47), pp. 29-30. This claim is closely related to Claim 12, both as a matter of substance and with respect to their procedural history. The Court, therefore, will treat it in the same manner as Claim 12. That is, the Court will deny the motion to dismiss with respect to Claim 13, without prejudice to Respondents asserting the procedural default defense to the claim in their answer.

Claim 14

The respondents do not appear to make any argument that Claim 14, Randolph's cumulative error claim, should be dismissed. Therefore, the motion to dismiss will be denied with respect to Claim 14.

**IT IS THEREFORE ORDERED** that Respondents' Motion to Partially Dismiss Amended Petition for Writ of Habeas Corpus (ECF No. 47) is **GRANTED IN PART AND DENIED IN PART**. Claim 11 of Petitioner's amended habeas petition is dismissed.

**IT IS FURTHER ORDERED** that Respondents shall, within 120 days from the date of this order, file an answer, responding to the remaining claims in Petitioner's amended habeas petition (Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 13 and 14).

**IT IS FURTHER ORDERED** that, in all other respects, the schedule for further proceedings set forth in the order entered September 11, 2017 (ECF No. 36) will remain in effect.

///

///

///

**IT IS FURTHER ORDERED** that, pursuant to Federal Rule of Civil Procedure 25(d), William Gittere is substituted for Timothy Filson as the respondent warden. The Clerk of the Court shall update the docket for this case to reflect this change.

DATED this 25th day of February, 2019.

_____
LARRY R. HICKS,
UNITED STATES DISTRICT JUDGE